### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

# AT SAVANNAH,

## JANUARY TERM, 1854.

Present—JOSEPH H. LUMPKIN, }
EBENEZER STARNES, } Judges.
HENRY L. BENNING. }

---

No. 58.—DAVID F. TOWLES, for the use of Amos Scudder & Mulford Marsh, plaintiff in error, *vs.* THE JUSTICES OF THE INFERIOR COURT OF CHATHAM COUNTY, defendants in error.

[1.] The power by contract to repair bridges across the Savannah, Ogeechee & Altamaha Canal, was not conferred on the Commissioners of Roads and Bridges of Chatham County, by the Act of 1833, to amend the fourteenth section of the Act to incorporate the Canal Company; or the Act of 1803, to amend the Act of 1799, to empower the Inferior Courts to order the laying out of roads, and the building and repairing of bridges; or the Act of 1834, to authorize the Commissioners of Roads of Chatham, to "Audit its own accounts," &c.

[2.] But even if it was by these Acts conferred on those Commissioners, it was withdrawn from them by the Act of 1845, to repeal a part of the eleventh section of the Act aforesaid, of 1799; and further to extend and define the power of the Inferior Courts of the several counties of the State.

Application for Mandamus.   Heard and decided by Judge
H. R. JACKSON, at Chambers, June Term, 1853.

In 1848, David F. Towles, by virtue of a contract made
with the Commissioners of Public Roads of the County of
Chatham, repaired a Bridge across the Savannah & Ogeechee
Canal, and received from the said Commissioners an order up-
on the County of Chatham for the amount thereof, $130.—
The Justices of the Inferior Court of Chatham county re-
fused to pay the order; and Towles applied for and obtained
a mandamus *nisi* from the Judge of the Eastern District.—
This mandamus was afterwards dropped, without a final hear-
ing.   Subsequently, Towles transferred the order to Mulford
Marsh, Esq., his former Attorney, and Amos Scudder.   In
1849, another application for payment was made by the as-
signees of Towles, upon the Inferior Court—which was again
refused.   An alternative mandamus was again issued, requir-
ing the Inferior Court to show cause why a mandamus abso-
lute should not be granted.   In response thereto, the Justices
of the Inferior Court returned as reasons for not paying :

1st. That by the Charter of the Savannah & Ogeechee Ca-
nal Company, that Company are bound to build and keep in
repair all bridges on public roads, crossed by the Canal.

2d. That contracts for the building and repairing of bridges,
can be made only by the Inferior Court, and not by the Com-
missioners of Public Roads.

3d. That this order should not be paid to these assignees,
because the transfer to them is tainted with *maintenance and
champerty*.

On demurrer to this return, the Court below held the same
to be sufficient, and dismissed the application for mandamus.

This decision is assigned as error.

An application was made for a re-hearing, upon the same
facts; which, being refused by the Judge, this decision also,
is assigned as error.

GUERARD, for plaintiff in error.

David F. Towles *vs.* Jus. Inf. Ct. of Chatham Co.

BERRIEN, for defendant.

*By the Court.*—BENNING, J., delivering the opinion.

1. Was the contract with Towles, made in 1848, by the Commissioners of Roads and Bridges for the County of Chatham, valid?

2. If valid when made, did the contract, on being transferred by Towles to Scudder & Marsh, become invalid, for maintenance or champerty?

These are the questions raised by the facts of this case.

It is insisted for the plaintiffs in error, that the Commissioners of Roads and Bridges, had, by virtue of several statutes, power to make this contract.    First, by the Act of 1833, to amend the fourteenth section of the Act of Incorporation of the Savannah, Ogeechee & Altamaha Canal Company.—This Act of 1833, substitutes for the fourteenth section of the Act of Incorporation, these words:  " Sec. 14. And be it further enacted, That, whenever the said Canal shall intersect a public road, the said Corporation shall be bound to build a safe and suitable bridge ; and the bridges of all public roads, laid out before or after the passage of this Act, crossing the said Canal, shall be constructed and kept in repair by the county—all repairs heretofore done, or hereafter to be done, to be paid for by the county, by the order of the Commissioners of the Public Roads for the County of Chatham: *provided,* that the requirements of this section shall not extend beyond the County of Chatham."  (*Pamph. Acts* 1833, 103.)

Of a part at least, of these words, it may, perhaps, be said that it is inconsistent with another part.    The words " That whenever the said Canal shall intersect a public road, the *said Corporation* shall be bound *to build* a safe and suitable bridge", can hardly be made to consist with these, "And the bridges of all public roads, laid out before or after the passage of this Act, crossing the said Canal, shall be *constructed* and kept in repair *by the County.*"    One set of words makes it the duty of the Corporation to "build" certain bridges ; the

other makes it the duty of the county to "*construct*" the same bridges.

This conflict, however, if it is one, does not necessarily extend beyond the matter of the *building* of the bridges, to that of the *repairing* of them. The set of words which imposes upon the Corporation the duty of "building", is silent as to that of repairing; whilst the set which imposes upon the county the duty of "constructing", is not silent as to that of repairing, but imposes it also upon the county. And in the absence of any necessary conflict in this respect, it is safest to let the words imposing the duty of repairs upon the county, have their effect. Their effect is, that the county was to keep in repair the bridges referred to in the Act, viz: the bridges of all public roads, laid out *before* or *after* the passage of the Canal Act of 1826.

This view is strengthened by these subsequent words of the Act: " All repairs *heretofore* done, or *hereafter* to be done, *to be paid for by the county*"; and that too, " By order of the *Commissioner of the Public Roads* for the County of Chatham." If the repairs were to be paid for by the county, and by the order of the county's officer, the Commissioner of Roads, it seems no more than consistent that the repairs were also to be *contracted* for by the county.

This view is confirmed by comparing the law repealed, with this Act of 1833, repealing it. The repealed law, the fourteenth section of the Act of Incorporation of the Canal Company, (*Dawson Comp.* 96) is in these words : " That whenever the said Canal shall intersect a public road, the said Corporation shall be bound to build a safe and suitable bridge; but the bridges of all public roads laid out after the passage, crossing the said Canal, shall be constructed and kept in repair by the county." The Act of 1833 was substituted for this section; and what it is, we have seen. It is to be presumed that the Act was intended to make *some* change in the Act of Incorporation. But what change can be imagined as the one intended, except that of shifting from the Corporation to the county, the duty of building and repairing bridges on roads

which had been laid out *before* the passage of the Act of Incorporation. As to bridges on roads laid out *afterwards*, the duty of constructing and repairing them was imposed upon the county, by the Act of Incorporation itself.

Assuming then, that the county, and not the Corporation, was to build and repair the bridges across the Canal, the question remains, how the county was to do this; whether it was to do the duty by means of contracts, to be entered into by the Commissioners of Roads and Bridges? In other words, had these Commissioners the power to make contracts for the repair of the bridges across the Canal?

This power is certainly not expressly given to the Commissioners, by the Act of 1833.

And we cannot say that it is impliedly given. The words of the Act are, "That the bridges shall be constructed and kept in repair by the county". The *county* it is, upon which these words confer the power of construction and repair. What is meant by the expression, "the County?" In common usage, when we speak of the county, in reference to power or duty, we mean the Justices of the Inferior Court, or the Inferior Court. This expression is found at another place, further on in the Act; and there it has received this interpretation, by the plaintiffs in error themselves. "All repairs heretofore done, or hereafter to be done, to be paid for by *the county*", by order of the Commissioner of Roads. Now the order of the Commissioner in this case, in which the plaintiffs in error bring suit to have paid, is drawn upon the Justices of the Inferior Court of the County of Chatham; a thing which doubtless would not have been done, had not both the Commissioners of Roads and the plaintiffs in error considered the words in the Act, "the county", to mean the Justices of the Inferior Court of the county. It is difficult to perceive why this is not the true meaning of the words.

Considering it to be the true meaning, it follows that the power to make contracts for the repair of the bridges across the Canal, was not conferred upon the Commissioners, by the Act of 1833.

But it is further insisted, that two other Acts of the Legislature are to be construed in connection with this Act, as being in *pari materia ;* and that this power to the Commissioners results from the three Acts taken together.

Of these two other Acts, one is the Act of 1803, to amend the Act which empowers the Inferior Courts of the several counties in the State, to order the laying out of roads and the building of bridges, so far as respects the counties of Chatham, Liberty, Bryan, Glynn, McIntosh and Camden. (*Clayton's Dig.* 152.) This Act provides, that the Justices of the Inferior Courts of these counties shall appoint three Commissioners to each district in the county ; and it *empowers* and requires, among other things, the Commissioners to 'erect' and 'repair' bridges in their several districts. But it prescribes the manner in which they are to do the work, viz : by means of the labor and service of " All the male white inhabitants, free negroes and mulattoes, and all male slaves, from the age of eighteen to forty-five years", with some exceptions. The Act does not empower the Commissioners to do the work by *contract*, except in a specified case : that in which " It may not be practicable for the several persons subject to work", to do the work required to be done by working those days ; and even in that case, it empowers them to contract for the work, only with the consent of the Justices of the Inferior Court.— But unless the Act empowered the Commissioners by themselves to make *contracts* for the repair of the bridges in question, it is immaterial what other power it gives them. The question is, of the power of the Commissioners to repair by *contract*.

This Act of 1803, therefore, does not help the Act of 1833 confer upon the Commissioners the power of repairing by contract.

The other of the two Acts, is the Act of 1834, (*Pamph.* 1834, 195) to amend the Road Laws of this State, as far as to authorize the Commissioners of Roads of Chatham county, to audit their own accounts ; and to receive from the Inferior

Court in advance, the money which, on due estimate, should be necessary for the year.

As to this Act, it may be said that one thing is clear. The power, whatever it is, which is given to the Commissioners of Roads, by the Act, is one which is subject to the supervision and control of the Justices of the Inferior Court. The sum of money to be paid the Commissioners is only to be paid them, "Provided that the said Justices of the said Inferior Court, shall be satisfied with the *correctness and propriety* of said estimate; and that the sum so required, shall be consistent with the finances of the county". It says nothing about giving to the Commissioners, by themselves, the power by contract, to repair bridges.

This Act, therefore, is as inefficacious as that of 1803, for aiding the Act of 1833 to confer the power upon the Commissioners.

[1.] The conclusion, therefore is, that the power by contract to repair bridges across the Canal, was not conferred on the Commissioners of Roads and Bridges of Chatham, by the Acts of 1833, 1803, 1834, or by any of those Acts.

But if the power was conferred on the Commissioners by these Acts, the defendants in error insist that it has since been withdrawn by another Act. They insist that this has been done by the Act of 1845, to repeal a part of the eleventh section of the Act to empower the Inferior Courts of the several counties in this State, to order the laying out of roads and the building of bridges; "And further, to extend and define the power of said Courts, as to the construction of bridges". Are the defendants in error right in this?

The second section of this Act of 1845, is as follows:

"That the Justices of the Inferior Courts of the *several counties* in this State, or a majority of them be, and they are hereby authorized to contract for the building and *keeping in repair* of public bridges, for such time and in such way as they may deem most advisable, either by letting the same to the lowest bidder, hiring hands for that purpose, or in any other way that to them may appear right and proper". By these

words, unlimited power with respect to the construction and repair of bridges by contract, is given to the Justices of the Inferior Courts of " the *several* counties in this State".

But it is said by the plaintiff's counsel, that this Act does not extend to the county of Chatham, because it is a *general* affirmative Act; and there is a *particular* affirmative Act applicable to Chatham, viz: the Act aforesaid of 1803; and no general affirmative Act affects a particular affirmative one.

It is admitted to be in most cases true, that a general affirmative statute does not abrogate a particular affirmative statute. And the reason is, that generally speaking, two such statutes are not repugnant to each other. But even in two affirmative statutes, the matter in the one may be so clearly repugnant to the matter in the other, that the posterior one shall repeal the other. "As if a former act says that a juror, upon such a trial, shall have twenty pounds a year, and a new statute afterwards enacts that he shall have twenty marks—here the latter statute, though it does not express, yet necessarily implies a negative, and virtually repeals the former." (1 *Black. Com.* 89.)

Let the question of repeal by the Act of 1845 be tried by these tests:

1. Does this Act *extend* to the county of Chatham?

The Act is entitled an Act to repeal a part of the eleventh section of an Act, entitled an Act to empower the Inferior Courts of the *several counties* in this State," &c. The second section declares that the Justices of the Inferior Courts of the *several counties* in this State, or a majority of them, be and they are hereby authorized," &c. Do the words " The several counties in this State" embrace the county of Chatham? Literally taken, they undoubtedly do. And words are to be construed according to their literal import, unless there are very strong reasons to the contrary.

Are there such reasons with respect to this Act? We think not. We think, indeed, that there are strong reasons for giving these words their literal import—and so, for making them include the county of Chatham, as well as all of the other coun-

ties in the State. The reasons are that the words have been repeatedly used in that sense *by the Legislature in other* acts of a kindred nature.

These words are found in the General Act of 1799, on the subject of Roads and Bridges. That is entitled "An Act to empower the Inferior Courts of the *several counties* in this State to order" &c. It enacts, among other things, that "The Inferior Courts of the *several counties* of this State shall have full power," &c. And in this Act the words in the opinion of the Legislature itself, included the county of Chatham, for it soon afterwards, by another Act, excepted Chatham and some other counties from the operation of the Act—and these are the only words in it which could bring them within its operation. This the Legislature did by the Act of 1803, an Act which has been before referred to. This Act of 1803 is to amend the above Act of 1799. It is entitled "An Act to alter and amend an Act to empower the Inferior Courts of the *several counties* within this State to order the laying out the public roads, and to order the building and keeping in repair the public bridges", so far as respects the counties of *Chatham*, Liberty, Bryan, McIntosh, Glynn and Camden. It has a great number of provisions for these last named counties, and concludes with a section which repeals all laws pointing out any other mode for keeping in repair the public roads and bridges in this State "so far as respects the counties of *Chatham*, Liberty, Bryan, McIntosh, Glynn and Camden." This Act, therefore, in the opinion of the Legislature, was necessary, in order to prevent the Act of 1799 from operating upon the county of Chatham, among others, and yet the Act of 1799 had in it nothing by which it could extend to any of those counties at all, except the expression, *the several counties within this State.* That is to say, that expression in the opinion of the Legislature included the county of Chatham. (*Mar. & Craw. Dig.* 403. *Clayton Dig.* 152.)

Again. In 1818 the Legislature passed another Act on the subject of roads and bridges. It is a *general affirmative* Act. It is entitled an Act " To alter and amend the Road Laws of

this State". It has thirty-five sections, and is emphatically the Road Law of the State. It declares, among other things, " That the Justices of the Inferior Courts, in and for the *several counties* in this State" shall define, distribute and appoint commissioners of roads. It makes provision as to the power of the commissioners; the force which is to work on the roads; the appointment of overseers; the penalty for defaults; the width of roads;. the repair of bridges; and other similar things. In short, it covers in respect to the *several counties* in this State, pretty much what the Act of 1803 covers in respect to the counties of Chatham, Liberty, Bryan, McIntosh, Glynn and Camden. It has no words by which it can include the county of Chatham, except the words aforesaid "The Justices of the Inferior Courts *in and for the several counties* in this State." And yet, although it is thus a general affirmative Act, and although the Act of 1803 is a particular affirmative Act, the Legislature considered that it would, by virtue of these words, extend to Chatham, Liberty, &c., and repeal the Act of 1803, for it inserted in the Act a section to prevent that consequence.— The 32d section which provides "That the following counties, to wit: Richmond, Burke, Jefferson, Chatham, Bryan, McIntosh, Glynn, Camden, Liberty and Effingham shall be, and they are hereby exempted from the operation of this Act." (*Lamar Dig.* 786.)

Legislative use, therefore, of the words "The several counties in the State", as well as their literal meaning, makes them include the. county of Chatham, even when they are found in a general affirmative Act.

The Act of 1845, therefore, by virtue of these words, *extends* to the county of Chatham. Conceding this to be so, a question still remains, does the.Act, although extending to Chatham, conflict with the Acts of 1833, 1803 and.1834, assuming now that those Acts confer on the Commissioners of Roads and Bridges of Chatham the power of repairing, by contract, bridges across the canal. (*Pamph. Acts* 1845, 47.)

The Act declares that the Justices of the Inferior Court shall be authorized to *contract* for the building and keeping in

David F. Towles *vs.* Jus. Inf. Ct. of Chatham Co.

repair of public bridges for such time, and in such way, as they may deem most advisable : in other words, that they may build and repair bridges by *contract*, in such way as they please.

The Act has also these words : " Such laws as militate against this Act be, and the same are hereby repealed."

Now assuming, as before, that the Acts of 1833, 1803, 1834, give to the Commissioners the power of repairing the bridges by contract, do they in that " militate" against the Act of 1845 ?

If the Commissioners have power to repair, they, of course, have power to do it against the pleasure of the Justices of the Inferior Court; but, according to the Act of 1845, the Justices may repair as they please. A power of repair in the Commissioners, would therefore militate against this power of repair in the Justices. It follows, that if the Acts of 1833, 1803, 1834, bestow the power of repair upon the Commissioners, they, to that extent, militate against the Act of 1845, and are, therefore, to that extent, repealed by it.

[2.] If, then, the power of repairing, by contract, the bridges across the canal, was conferred on the Commissioners of Roads, by the Acts of 1833, 1803, 1834, it was withdrawn by the Act of 1845.

Nor was the operation of the Act, in this respect, affected by the Act of the same year, 1845, to change the time of the meeting of the Commissioners of Public Roads in Chatham county. That Act provides, that from and after its passage, the Commissioners of Public Roads and Bridges of Chatham county shall hold their annual meetings on the second Monday in December; thus recognizing, as it is claimed for the plaintiffs in error, the continued existence of the Commissioners of Roads and *Bridges ;* and of their power to repair, &c.—for it was asked, what else were they to meet for, but to consider of repairs and construction.

There are two answers to this : 1. The Commissioners had other duties to perform than those of building bridges by *contract*. They had duties to perform with respect to the roads, and indeed, duties, with respect to the *bridges* too. They had

to 'erect and repair' bridges, as far as they could do it, with the hands of the districts. 2. This Act was passed two days *prior* to the other Act of 1845. At the time of its passage, no change had been made in the old law with regard to the power of the Commissioners. It might, therefore, well recognize the power of repair by contract in the Commissioners, and yet not be able to affect an Act, passed two days afterwards, which took away the power.

The Commissioners not having had the power to repair the bridge in question by contract, it follows that their contract with Towles for repairs was *not* valid, and therefore, that the Justices of the Inferior Court could not be compelled to recognize it, and that Judge *Jackson* was right in dismissing the alternative mandamus.

And as nothing new of law or fact was introduced into the case on the motion for a re-hearing, he was also right in overruling that motion. Both of his decisions ought to be affirmed.

The question of maintenance or champerty being an important one, and one which it is not necessary to decide in this case, is designedly left undecided.